**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**BEVERLY J. ROTHWELL**,

> **Plaintiff,**

> **v.**                                   **Civil No. 3:03-CV-00637**
>                                                    **(GLS)**

**CHENANGO COUNTY N.Y.S.A.R.C.**
**PENSION PLAN *et. al.*,**

> **Defendants.**

**APPEARANCES:**                    **OF COUNSEL:**

**FOR PLAINTIFF:**

MARGARET J. FOWLER, ESQ.
Levine, Gouldin Law Firm
450 Plaza Drive
Vestal, New York 13902-0106

**FOR DEFENDANTS:**

JAMES A. SACCO, ESQ.
Pope, Schrader Law Firm
P.O. Box 510
20 Hawley Street
Binghamton, New York 13902

**Gary L. Sharpe**
**U.S. District Judge**

## Memorandum-Decision and Order

## I. Introduction

Plaintiff Beverly J. Rothwell, a former employee of the Chenango County Chapter of the New York State Association for Retarded Citizens ("ARC"), was a participant in ARC's Employee Retirement Income Security Act ("ERISA") pension plan ("Plan") (*see* 29 U.S.C. § 1101 *et. seq.*).  On October 24, 2001, she terminated her employment and elected a lump sum distribution from the Plan.  ARC valued the distribution using a "balance forward" method, and paid her $18,870.88 less than she would have received had it used an alternative method.  ARC's ERISA obligations and its valuation method are the central disputes in this litigation.[1]

Citing 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B), Rothwell seeks unpaid benefits and equitable relief; namely, compensation and interest for the diminished value of her lump sum distribution, punitive damages resulting from ARC's intentional interference with her rights and discriminatory conduct, and attorney's fees and costs.  She claims that ARC (1) denied her plan benefits; (2) failed to inform her of her plan rights;

---

[1]As the employer, ARC created the Plan, and ARC's CEO, John McHale, was the designated Administrator.  For the sake of convenience and because any distinction is immaterial to the court's conclusions, all defendants are collectively referred to as "ARC."

(3) failed to administer the plan in a uniform manner; (4) failed to provide an accurate and comprehensive Summary Plan Description ("SPD"); and (5) intentionally interfered with her rights and discriminated against her.

After a bench trial, the court permitted supplemental briefing. Having reviewed the post-trial submissions, and based on the court's factual conclusions and subsequent analysis, judgment is entered as follows: (1) as to Rothwell's first cause of action asserting a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), judgment is entered on behalf of Rothwell in the amount of $18,870.88 plus 9% simple interest from December 24, 2001, to the date of judgment; (2) as to Rothwell's second, third and fourth causes of action seeking equitable relief pursuant to 29 U.S.C. § 1132(a)(3), judgment is entered on behalf of ARC, and the claims are dismissed as duplicative; (3) as to Rothwell's fifth cause of action seeking equitable relief, including punitive damages, because of discrimination and interference with her rights in violation of 29 U.S.C. § 1132(a)(3), judgment is entered on behalf of ARC, and the claim is dismissed because Rothwell has failed to sustain her burden of proof; and (4) as to Rothwell's application for attorneys fees, decision is reserved pending further submissions of the parties.

3

## II. **FACTS**[2]

Rothwell worked for ARC from 1983 until she voluntarily resigned on October 24, 2001.  During her tenure, she invested in ARC's self-administered and defined ERISA Plan.  *See* 29 U.S.C. § 1132.  ARC made annual, year-end 10% matching contributions on behalf of its employees, and in 2001, there were approximately sixty participants.  When Rothwell resigned, she elected a lump sum distribution.  Almost seven months later on May 23, 2002, she received a check in the amount of $87,536.71, the value of her account on December 31, 2001.  A year earlier, the value of her account was $106,407.59, $18,870.88 more than she received.

The Plan was based on a prototype trust agreement prepared by Smith Barney, and was adopted by ARC's Board of Directors in 1996.[3]  The Plan Administrator was John McHale, ARC's Executive Director, who, according to the Plan's express terms, had "exclusive responsibility and complete discretionary authority to control the operation, management and administration of the plan."  However, administrative details were handled by ARC Vice-Presidents Powers from 1994-2000, and Ellis after July 2000.

---

[2]This decision reflects the court's resolution of disputed facts.

[3]There was a different plan in place before 1996.

4

Actuarial Pension Analysts, Inc. (APA) provided actuary services to ARC
and the Plan from 1994-2002.  Catherine Howard, an APA Senior Pension
Analyst, provided third party administrative and consultative services, and
principally interacted with Powers and Ellis.

After the Plan was adopted in 1996, it was never distributed to
employees nor did ARC prepare or distribute an SPD.  ARC discovered the
SPD oversight four years later in March 2000, and directed APA's Howard
to create one, and retroactively apply it to 1996.  Howard prepared a
generic SPD from off-the-shelf software, and the details were not specific
to the Plan.  She sent copies to ARC, but those copies were never
distributed to Rothwell or ARC's other employees.  When Rothwell
resigned, there was an undistributed SPD in place, but she never saw it nor
did she know what an SPD was, and, therefore, she did not rely on the
language of the Plan or the SPD in reaching her decision to resign and
elect a lump sum distribution.

Valuation, distribution and cut-off dates are critical to all pension
plans.  If plans are valued only once a year, distributions are subject to
market vagaries.  Thus, if employees can elect to retire after the preceding
but before the next valuation date, and the value of their account is fixed by

the prior valuation, they can engage in market timing to avoid losses.  A common means for benefit plans to control such variables is to use a "balance forward" valuation method.  This method would normally fix a cut-off and distribution date.  If employees elected a distribution before the cut-off, the distribution would be valued as of the preceding valuation date.  On the other hand, if the election was made after the cut-off, it would be valued as of the next valuation date.  This method is low cost, simple and easy to administer, spreads the losses and gains to all plan participants, and helps prevent market timing.

The ARC Plan was valued yearly on December 31, and employees received annual account statements afterwards.  For valuation purposes, the Plan and SPD adopted a balance forward method, but did not discuss, or specifically articulate, cut-off and distribution dates.  Thus, important terms and critical dates were left to the discretionary decision of the Plan Administrator, McHale.  At least by the time of his trial testimony, McHale understood how valuation functioned in 2001.  If an employee left in the fourth quarter (e.g., after September 30th), the pension account was valued as of December 31st of that year.  However, he freely admitted that he delegated the details to his Vice-Presidents, Powers and Ellis.

McHale's understanding aside, it is clear that the valuation cut-off and distribution dates not only varied, but changed after the Plan was adopted. During Powers' tenure, and from 1996 until late 1999, she used a December 1st cut-off.  If employees retired before then, their account was valued as of the preceding December 31st.  Powers then forwarded pension requests to Howard, Howard prepared the paperwork, and employees received their pension checks from Smith Barney in four to eight weeks.  On or after December 1, she held the pension request until after the forthcoming December 31st valuation date.

In late 1999, Howard and Powers discussed setting an earlier cut-off because the one month's time to process pension requests was insufficient, especially since employees had ninety days from their retirement date to elect a pension, lump sum distribution, or roll-over into another investment account.  By January 2000, Powers changed the cut-off date to June 30th.

In July 2000, Ellis assumed responsibility for pension work and coordination with APA and Howard.  In September, she and Howard discussed changing the cut-off date once again, and proposed September 30th.  After Ellis discussed the proposal with McHale, the date was

7

changed.  Thus, at the time of Rothwell's resignation a year later, the cut-

off was September 30th.  Of course, no employee, much less Rothwell,

would have known about the dates or impact of those dates since there

were no details in the SPD, and the SPD was not distributed to the

employees in any event.

On September 24, 2001, Rothwell submitted a letter to ARC giving

thirty days notice of her intention to resign on October 24.  Had she

resigned before September 30th, ARC now agrees that the value of her

pension account would have reverted to the prior December 31st.

When she gave the resignation letter to McHale, the two engaged in a

cordial conversation.  McHale told her that she was lucky because her

pension account would be valued as of the preceding December 31st, and

she would not suffer the market losses that had occurred in 2001.

Although McHale did not recall that remark, the court credits Rothwell's

recollection, and, of course, McHale's statement was accurate when made

on September 24.

The court also credits Rothwell's testimony that had she known of the

September 30th cut-off, she had various options to minimize the 2001

market losses.  For example, she could have resigned immediately, or she

8

could have continued working until December 31st when she would have received ARC's 10% employee matching contribution.  It is clear, however, that her decision to resign resulted from increasing discord between she and McHale.  As she phrased it in her September 24 letter, "getting away from the current stress level of my position will greatly contribute to my good health."  However, the court discredits ARC's argument that its failure to give Rothwell an SPD was irrelevant because she suffered from a serious medical condition and would have resigned anyway.

On October 24, 2001, Rothwell had an exit interview with Ellis. Although the two dispute the details, the court credits so much of Rothwell's testimony that in light of that conversation, she expected to receive a check reflecting the December 2000 balance.  As to timing, and crediting Powers' testimony that processing took four to eight weeks, Rothwell should have received her check no later than December 24, 2001. In fact, she did not receive the check until May 16, 2002.

The court credits Ellis' explanation for the delay, and there are no nefarious reasons attributable to ARC.  First, Ellis believed that she could not process Rothwell's lump sum request because her termination occurred in the fourth quarter, and valuation would not occur until

9

December 31, 2001.  Furthermore, there were a series of errors in processing the paperwork, including some by Smith Barney, the actual check issuer.  Despite the reasonable explanations, the delay beyond December 24, 2001 was attributable to ARC and the Plan.

The court is not persuaded that ARC or the Plan intentionally discriminated against Rothwell or, in general, failed to uniformly administer the Plan.  Unquestionably, ARC retained the discretionary authority to alter cut-off dates for pension valuation purposes, and the balance forward method is a reasonable practice in the industry.  Reasonable cut-off dates are essential to properly administer a plan for various processing purposes, and the balance forward valuation method protects the investment of those who remain in the Plan, especially in times of down markets.  By enforcing the September 30th cut-off, ARC was not discriminating against Rothwell, but was instead protecting the interests of the remaining participants.  Furthermore, ARC was a small company with few Plan participants.  Although the Plan was administered differently at different times, there was insufficient evidence of demands on the Plan by retiring employees like Rothwell to support the conclusion that the Plan was not uniformly administered.  Here, the principal problem is that Rothwell could not make

an informed retirement decision because she had no SPD or Plan

information.

### III.  ANALYSIS

### A.  Dismissal of Rothwell's Duplicative Claims

Clarification of Rothwell's claims reveals that several are duplicative,

and subject to dismissal.  Primarily, she alleges that she was denied plan

benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).  *See Rothwell Amend.*

*Compl.("Compl."), First Cause of Action,  ¶¶ 30-32, Dkt. No. 25.*  As

relevant, § 1132(a)(1)(B) provides:  "[a] civil action may be brought...(1) by

a participant or beneficiary... (B) to recover benefits due to him under the

terms of his plan, [or] to enforce his rights under the terms of the plan...."

As support for this claim, Rothwell alleges that ARC violated ERISA

duties owed to her; namely, it (1) breached its fiduciary duty by failing to

inform her of her plan rights in violation of 29 U.S.C. § 1104[4] (*see Compl.*

*at ¶¶ 33-35*); (2) breached its fiduciary duty by failing to administer the plan

uniformly in violation of 29 U.S.C. § 1104 (*see Compl. at ¶¶ 36-38*)*; and* (3)

---

[4]29 U.S.C. § 1104 states in pertinent part: "(a) Prudent man standard of care
(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge
his duties with respect to a plan solely in the interest of the participants and beneficiaries and..
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a
prudent man acting in a like capacity and familiar with such matters would use in the conduct
of an enterprise of a like character and with like aims...."

failed to reasonably apprize her of her rights in the Plan document and the SPD in violation of 29 U.S.C. § 1022[5] (*see Compl. at ¶¶ 39-41*).  Not only does she cite these failures as support for her benefits claim, but she separately cites them in three causes of action seeking equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B) (*see Compl., Second-Fourth Causes of Action, ¶¶ 33-41*).  Lastly, she asserts a fifth equitable claim arguing that ARC intentionally interfered with her rights and discriminated against her in violation of 29 U.S.C. § 1140[6] (*see Compl. at ¶¶ 42-44*).

In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court reviewed the ERISA relief available pursuant to 29 U.S.C. § 1132.  Insofar as applicable here, the Court observed that § 1132(a)(1)(B) focuses upon a specific area; namely, the wrongful denial of benefits.  *Id.* at 512.  On the other hand, 1132(a)(3) is a catchall provision that provides equitable relief

---

[5]29 U.S.C. § 1022 states in pertinent part: "A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

[6]29 U.S.C.A. § 1140 states in pertinent part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan...."

for violations that § 1132 does not otherwise remedy.  *Id.*  Thus, "where

Congress elsewhere provide[s] adequate relief for a beneficiary's injury,

there will likely be no need for further equitable relief, in which case such

relief normally would not be 'appropriate.'" *Id.* at 515.  Therefore, it is

appropriate to permit a § 1132(a)(3) claim if it provides distinct relief from a

§ 1132(a)(1) claim, but it is inappropriate to include a § 1132(a)(3) claim

which is merely duplicative.[7]  *See Rubio v. Chock Full O'Nuts Corp.,* 254 F.

Supp. 2d 413, 432 (S.D.N.Y.2003) (dismissing § 1132(a)(3) claim

duplicative of § 1132(a)(1) claim).

Under § 1132(a)(1), "Congress [has] authorized "a participant or

beneficiary" to bring a civil action "to enforce his rights under the terms of

the plan," without reference to whether the relief sought is legal or

equitable.  *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S.

204, 221 (2002) (citing 29 U.S.C. § 1132(a)(1)(B)).  ARC's failure to give

Rothwell an SPD allows her to recover her loss of benefits and interest as

legal relief under § 1132(a)(1)(B).  Since she has a viable § 1132(a)(1)(B)

wrongful denial of benefits claim, her second through fourth causes of

---

[7]Naturally, the same claim may be asserted under both 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3) at the pleading stage.  See *Chapro v. SSR Realty Advisors, Inc.*, 351 F. Supp. 2d 152, 156 (S.D.N.Y. 2004).

action seeking § 1132(a)(3) equitable relief are dismissed as duplicative.[8]

Rothwell's fifth cause, alleging 29 U.S.C. § 1140 discrimination, is not duplicative.  It is appropriately filed under § 1132(a)(3), *see Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 333 (2d Cir. 1997) (citing *Ingersoll-Rand Company v. McClendon*, 498 U.S. 133, 142-44 (1990), and must be addressed on the merits.

## B. <u>Rothwell's Denial of Benefits Claim</u>

### 1. <u>Standard Of Review</u>

A denial of ERISA benefits is reviewed *de novo* unless the benefit plan gives the administrator discretion to determine benefits eligibility or to construe the plan terms, in which case the review is subject to an arbitrary and capricious standard.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108, 115 (1989); see also, *Lauder v. First Unum Life Ins. Co.,* 284 F.3d 375, 379 (2d Cir. 2002).  The arbitrary and capricious standard is more deferential and requires affirmance of the denial unless it is "without reason, unsupported by substantial evidence or erroneous as a matter of

---

[8]The court notes that Rothwell characterizes her second and third causes as breaches of fiduciary duties, but she does not cite 29 U.S.C. § 1132(a)(2), instead citing the (a)(3) catchall.  She obviously recognizes that (a)(2) fiduciary breaches result in recoveries for the plan, not individual participants.  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)

(citation omitted).

Where contract language is plain and unambiguous, a court may

construe the contract.  *See Brass v. Am. Film Techs., Inc.,* 987 F.2d 142,

148 (2d Cir.1993).  Here, the arbitrary and capricious standard would

normally apply because the Plan expressly gave ARC the discretionary

authority to determine benefits eligibility and to construe its terms.  If,

however, a beneficiary has not received a plan or an SPD and is, therefore,

without notice of the delegation, there is an unresolved question in this

Circuit as to whether *de novo* review applies instead.  *See e.g., Burke v.*

*Kodak Retirement Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003); *Layaou*

*v. Xerox Corp.,* 238 F.3d 205, 208 (2d Cir. 2001)*; McCarthy v. The Dun &*

*Bradstreet Corp.*, 2004 WL 2743569, *2 (D.Conn. Nov. 30, 2004).

Because the court finds that ARC's failure to distribute the Plan and the

SPD prejudiced Rothwell, it concludes that ARC's use of the balance

forward method to calculate her distribution and the delay in payment were

both unreasonable under either standard.  Accordingly, it is unnecessary to

resolve the Circuit conflict.

### 2. ERISA Disclosure Requirements

15

"ERISA provides that employees must receive a summary plan description of any employee benefit plan within ninety days after joining the plan and every five years thereafter if the plan is amended or every ten years if it is not." *Howard v. Gleason*, 901 F.2d 1154, 1159 (2d Cir. 1990) (citing 29 U.S.C. §§ 1022(a)(1), 1024(b)(1)).  The SPD must clearly articulate Plan eligibility requirements, available benefits, and circumstances which may result in the denial or loss of benefits.  *Id.*  "In fulfilling this duty, an administrator must also 'make reasonable efforts to ensure each plan participant's actual receipt of the plan documents.'" *Weinreb v. Hospital For Joint Diseases Orthopaedic Institute*, (*Weinreb II*) 404 F.3d 167, 170 (2d Cir. 2005) (quoting *Leyda v. Allied Signal, Inc.*, 322 F.3d 199, 208 (2d Cir. 2003)).  In part, this is "to ensure that employees receive sufficient information about their rights under employee benefit plans to make well-informed employment and retirement decisions." *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 451 (3d Cir. 2000).  "This written requirement is central to [this court's] analysis of ERISA plans because it 'serves two of the primary goals of ERISA:  informing employees of the benefits to which they are entitled, and providing some degree of certainty in the administration of benefits.'" *Fiefer v. Prudential Ins. Co.*, 306 F.3d

16

1202, 1208 (2d Cir. 2002) (citing *Wentworth v. Digital Equip. Corp.*, 933 F. Supp.123, 127 (D.N.H. 1996). However, "[i]f a summary plan 'is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose' under 29 U.S.C. § 1132(a)(1)(B)." *Layaou v. Xerox Corp.*, 238 F.3d 205, 212 (2d Cir. 2001) (quoting *Howard*, 901 F.2d at 1159).

It is undisputed that ARC violated ERISA's disclosure requirements. *See* 29 U.S.C. § 1021(a). Although the SPD was belatedly created in 2000 and retroactively applied to 1996, ARC still failed to distribute it. Although ARC argues that Rothwell could have asked for a copy, it is well settled that "[t]he defendants are obligated to provide the summary plan description within 90 days even without a request under 29 U.S.C. § 1024(b)(1)." *Simeon v. Mount Sinai Medical Center* 150 F. Supp.2d 598, 603-04 (S.D.N.Y. 2001).

The Second Circuit has recently held that district courts must apply the likely prejudice standard when a plan administrator fails to comply with ERISA's disclosure requirements. *See Weinreb II*, 404 F.3d at 171. That holding is premised on the fact that "[a]n SPD that is deficient only as to a

17

particular requirement communicates that requirement no better than a wholly missing summary description, and both threaten the same harm to employees." *Id.* Moreover, "[t]he individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors." *Id.* (citations omitted). "Nevertheless, even where an administrator fails to inform a participant of a requirement through a summary plan description, the administrator may avoid liability by showing that any error was harmless, *e.g.,* by showing that the employee had actual knowledge of the requirement." *Weinreb v. Hospital for Joint Diseases Orthopaedic Institute (Weinreb I)*, 285 F. Supp.2d 382, 387 (S.D.N.Y.2003) (citing *Burke,* 336 F.3d at 113-14).

### 3. **Prejudice to Rothwell**

Rothwell was prejudiced by ARC's failure to educate her in plain English concerning her retirement and lump sum pension distribution options. ARC was required to do so in either the Plan, an SPD or through some other means, and did not. Furthermore, Rothwell was prejudiced by ARC's failure to issue a lump sum distribution check for $106,407.59, the value of Rothwell's pension on December 31, 2000, on or before December 24, 2001.

18

Rothwell received no SPD, no Plan documents, nor any other information that conveyed critical and precise information concerning valuation, cut-off and distribution dates.  Had she understood those concepts, she could have orchestrated her termination to minimize 2001 market losses.  For example, she could have simply terminated her employment when she gave her notice in September before the cut-off date, or she could have waited until the end of the year to augment her pension account balance when ARC made its 10% employee contributions. Furthermore, had ARC acknowledged its failure to properly educate Rothwell and agreed to distribute her lump sum distribution based on the preceding December's valuation date, it would have promptly processed her retirement, and paid her no later than December 24, 2001.

ARC's countervailing arguments are simply irrelevant or misplaced. It is clear that ARC and McHale, as the Administrator, had the discretionary authority to set valuation, cut-off and distribution dates.  While it is at least arguable that the Plan and SPD called for an annual valuation date, neither the Plan nor the SPD set specific cut-off and distribution dates.  Even if both documents were entirely forthcoming concerning the impact of such dates, no employee ever received the documents.

19

Furthermore, and although the likely prejudice standard governs the harm to Rothwell, she detrimentally relied on contrary statements about the dates made by McHale.  However, detrimental reliance is not the standard, and ARC's other arguments are thus irrelevant.  For example, there is no merit to ARC's claim that Rothwell failed to prove that she relied on the SPD to make her resignation decision, nor to its argument that she would have resigned because of her medical condition.

Accordingly, Rothwell is entitled to damages in the amount of $18,870.88 plus 9% simple interest from December 24, 2001, to the date of judgment on her first cause of action.[9]

## C.  Rothwell's Discrimination Claim

ERISA provides in part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."  29 U.S.C. § 1140.  In

---

[9]The court exercises its discretion to award prejudgment interest for the following reasons: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  *Sheehan v. Metropolitan Life Ins. Co.*, 01-cv-9182, 2005 WL 1020874, at *1 (S.D.N.Y. Apr. 29, 2005) (citations omitted).  Moreover, the court further finds that Rothwell is entitled to 9% at a simple interest rate.  *See id* at *3.

analyzing a § 1140 claim, the Second Circuit has adopted the burden-shifting test of *McDonnell Douglas*. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Plaintiffs must first establish a prima facie case of discrimination by showing that they (1) belong to a protected group, (2) were qualified for their positions, and (3) were discharged or denied employment under circumstances that give rise to an inference of discrimination." *Id.* Rothwell provides no evidence that she was "discriminated" against in violation of 29 U.S.C. § 1140, but, even if she could do so, ARC did not discriminate against her "for exercising any right to which [she  was] entitled under the provisions of an employee benefit plan." *Devlin v. Transportation Communications Intern. Union* 173 F.3d 94, 103 -104 (2d Cir. 1999).

Moreover, the Second Circuit "has explained that [§ 1140] was designed primarily to prevent unscrupulous employers from discharging or harassing employees in order to keep them from obtaining vested pension rights." *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 334 (2d Cir. 1997). This section "only reaches conduct which directly affects the employer-employee relationship in a fundamental way...so as to interfere

with ...pension rights." *Frommert v. Conkright*, 206 F.Supp. 2d 435, 440 (W.D.N.Y. 2002).

Rothwell provides no evidence even remotely alleging this sort of discrimination nor does she allege that the employee-employer relationship was adversely affected at all.  Instead, it is clear from the evidence that she voluntarily left her employment with ARC.  Moreover, this case "does not rise to the level of egregious conduct necessary to sustain a punitive damage claim." *Korn v. Levine Bros. Iron Works Corp.*, 574 F. Supp. 836, 843 (S.D.N.Y. 1983) (citing *Flaks v. Koegel*, 504 F.2d 702 (2d Cir.1974) ("wanton and willful" misconduct); *In re Marine Sulphur Queen,* 460 F.2d 89 (2d Cir.1972) (gross negligence, actual malice or criminal indifference equivalent to "reckless and wanton" misconduct)).

Accordingly, Rothwell's fifth cause of action is dismissed and the request for punitive damages is denied.

**D.  <u>Attorney's Fees</u>**

"An application for attorney's fees in an ERISA case is governed by 29 U.S.C. § 1132(g)(1)." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987).  "Ordinarily, the decision is based on five factors: (1) the degree of the offending party's culpability or bad

faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Id.* (citation omitted).

Neither party has addressed the *Chambless* factors. Accordingly, Rothwell is to submit a brief addressing those factors, and an affidavit of services pursuant to the lodestar method for the Northern District of New York within 14 days.[10] ARC is to file a response within 14 days of receipt of Rothwell's application. The court's reservation of decision on this issue does not stay entry of judgment.

## IV. **CONCLUSION**

For the reasons stated herein, it is hereby

**Ordered** that the Clerk of Court enter judgment as follows:

(1) as to Rothwell's first cause of action asserting a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), judgment is entered on behalf of Rothwell in the amount of $18,870.88 plus 9% simple interest

---

[10]Counsel for Rothwell should also address the impact of any contingency agreement with her client on the attorney fee application.

from December 24, 2001, to the date of judgment;

(2) as to Rothwell's second, third and fourth causes of action seeking equitable relief pursuant to 29 U.S.C. § 1132(a)(3), judgment is entered on behalf of ARC, and the claims are dismissed as duplicative;

(3) as to Rothwell's fifth cause of action seeking equitable relief, including punitive damages, because of discrimination and interference with her rights in violation of 29 U.S.C. § 1132(a)(3), judgment is entered on behalf of ARC, and the claim is dismissed because Rothwell has failed to sustain her burden of proof; and it is further

**ORDERED** that as to Rothwell's application for attorneys fees, decision is reserved pending further submissions of the parties in accordance with the terms of this decision.

**SO ORDERED.**

**Dated: September 19, 2005**
        **Albany, New York**

Gary L. Sharpe
U.S. District Judge

24